MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP  Hearing Date: 7/29/10
190 Willis Avenue                               At: 11:00 A.M.
Mineola, New York 11501
516-747-0300
Kevin R. Toole, Esq.
Attorneys for PJ Park, LLC

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
In re:                                          Chapter 11

PARKVIEW CARE AND
REHABILITATION CENTER, INC.,                    Case No. 08-71867

                    Debtor.
------------------------------------------------------x

## OBECTIONS OF PJ PARK, LLC TO THE DISCLOSURE STATEMENT OF PARKVIEW ACQUISTION, LLC RELATING TO THE PLAN OF REORGANIZATION OF PARKVIEW ACQUISITION, LLC

TO THE HONORABLE DOROTHY T. EISENBERG,
UNITED STATES BANKRUPTCY JUDGE:

PJ Park, LLC ("PJ Park"), by its counsel, Meltzer, Lippe, Goldstein & Breitstone, LLP., by Kevin R. Toole, Esq., as and for its objections to the Disclosure Statement (the "Disclosure Statement") of Parkview Acquisition, LLC ("Acquisition"), with respect to the proposed Plan of Reorganization dated June 30, 2010 (the "Plan") filed in this voluntary case (the "Case") of Parkview Care and Rehabilitation Center, Inc. (the "Debtor") under chapter 11 of title 11, United States Code (the "Bankruptcy Code"), upon information and belief, respectfully sets forth as follows:

### BACKGROUND

1.  PJ Park is the landlord of the Debtor for the property located at 5353 Merrick Road, Massapequa, New York at which the Debtor operates its skilled residential nursing and

rehabilitation center (the "Nursing Home") pursuant to a certain non-residential real property lease, the First Amended and Restated Agreement of Lease dated as of January 1, 1996, by and between PJ Park, as landlord, and the Debtor, as tenant (the "Lease").

2. As the landlord of the Debtor, PJ Park is a party in interest in the Case and has standing to appear and be heard under Bankruptcy Code section 1109(b).

3. Upon motion of the Debtor under Bankruptcy Code section 365, and after notice and hearing, the Court approved the Debtor's assumption of the Lease, subject to the Rider to the Lease, dated July 1, 2008, by Order dated November 4, 2008 (the "Assumption Order").

4. The Debtor has been current with all of its obligations under the Lease.

## OBJECTIONS TO THE DISCLOSURE STATEMENT

5. The Disclosure Statement does not meet the general requirements of section 1125 of the Bankruptcy Code in that it does not provide "adequate information" about the Lease, the applicability of the terms of the Lease post Plan confirmation, the risks and issues in the event Acquisition cannot obtain required governmental licensing and approvals, and the consequences of any such denial of licensing and approval.

6. These objections are limited to the Disclosure Statement and the related Plan filed by Acquisition. They are not applicable to the Debtor's Disclosure Statement relating to its Third Amended Plan of Reorganization, or to the Debtor's plan itself.

7. Section 1125(a) of the Bankruptcy Code provides, in relevant part, as follows:

> (1) "adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, … that would enable a hypothetical investor of the relevant class to make an informed judgment about the plan,…

11 U.S.C. §1125(a)(1).

8.  The primary purpose of a disclosure statement is to give creditors information necessary to decide whether to accept the proposed plan in a chapter 11 case. In re Monnier Bros., 755 F.2d 1336 (8th Cir. 1985). Further, adequate disclosure is not limited to the disclosure statement, all pleadings filed in connection with the plan confirmation process, including, and starting with the plan, must provide the disclosure required under section 1125. Momentum Mfg. Corp. v. Employee Creditor Committee, 25 F3d 1132 (2nd Cir. 1994). For the reasons set forth below, PJ Park does not believe that the Disclosure Statement meets the disclosure requirements of section 1125(a) and that the Disclosure Statement must be amended to provide the disclosure that is discussed herein.

A. **The Lease has been Assumed**

9.  The Disclosure Statement on page 20 at Section "Means for Implementation of the Plan," ¶ 52 (ii) states that "Acquisition shall acquire all of the Debtor's assets including the Nursing Home, upon the following terms: ... Lease Assumption. The lease of the Nursing Home shall be deemed assumed and assigned to Acquisition on the Effective Date under the Plan."

10. The Disclosure Statement mischaracterizes the status of the Lease in this Case. Acquisition does not have the ability to direct the Debtor, or request that the Court approve the assumption of the Lease. The Lease has already been assumed under Bankruptcy Code section 365(a) pursuant to the Assumption Order. There is no mechanism under the Bankruptcy Code, or otherwise to render a prior debtor's lease or contract assumption void, and to provide a non-debtor reorganization plan proponent the ability to determine anew whether, or when to assume a lease or contract.

11. Acquisition must revise the Disclosure Statement to include a historical recitation of the assumption of the Lease pursuant to the Assumption Order, and to provide under the Means section that the Lease, as previously assumed, will be assigned by the Debtor

to Acquisition. Similarly, Article 6 of the Plan, at Section 6.1 must be revised. This provision of the Plan states that "The lease of the Nursing Home shall be assumed under the Plan and assigned to Acquisition." As the Plan cannot provide for the assumption of the Lease it must be corrected to provide that the Lease, as previously assumed in the case, will be assigned by the Debtor to Acquisition.

**B. The Disclosure Statement (and Plan) Implies that Any Subsequent Transfer of the Lease Would be Subject to Bankruptcy Code and Plan Provisions**

12. The Disclosure Statement on pages 21 and 22 at Section "Means for Implementation of the Plan," ¶ 52 (viii) states as follows:

> Assignment of Rights. In the event that the New York State Department of Health does not approve Acquisition as approved operator of the Nursing Home, Acquisition shall have the right to sell, assign, or otherwise transfer its interest in the Debtor's assets under the Plan without further order of this or any other court.

13. The Plan has an identical provision in Article 4, Section 4.2 (viii).

14. This provision appears to seek to afford Acquisition with rights, powers and protections afforded under a plan of reorganization and the Bankruptcy Code with respect to future sale, transfer, assignment, conveyance or other disposition of assets that it might own that it acquired from the Debtor under the Plan. In other words, the assignment of a lease or contract could be imposed by Acquisition using Bankruptcy Code 365 rather than Acquisition being subject to the terms and conditions of the lease or contract.

15. The ability of a debtor to assign a lease under Bankruptcy Code section 365(f) despite any lease clause that prohibits, restricts or conditions an assignment is a unique tool granted under the Bankruptcy Code. It is intended to enhance a debtor's flexibility to reorganize in a chapter 11 case, or to maximize the value that a debtor or trustee can receive for a lease in a sale environment. However, the use of section 365(f)'s expansive power is, by its

4

own plain language, limited to a trustee (and a debtor in possession acting with the powers of a trustee, see, 11 U.S.C. §1107).

16. A reading of the Plan's provision regarding a subsequent sale of the Nursing Home and related assets by Acquisition implies that Acquisition intends that the Plan, and consequently, the Bankruptcy Code would control such process. Such a provision is inconsistent with the Bankruptcy Code and in particular, Section 1129(a)(1) and (3) that states: The court shall confirm a plan only if all of the following requirements are met: (1) the plan complies with the applicable provisions of this title. … (3) The plan has been proposed in good faith and not by any means forbidden by law."

17. The trustee powers and rights that are afforded under the Bankruptcy Code to a debtor in possession, such as the Debtor, cannot be conveyed to another party. A non-debtor plan proponent, such as Acquisition, cannot use a proposed plan to take on the mantel of a trustee under section 1107, and the powers that position has under section 365(f). Any provision of a plan that seeks to give a non-debtor party the rights and powers of a debtor in possession under the Bankruptcy Code would not comply with the provisions of Bankruptcy Code, and would be deemed to be prohibited by applicable law, that being the Bankruptcy Code, including sections 365(f) and 1107.

18. If, at any time after the Effective Date (as that term is defined and utilized in the Plan), Acquisition is not able to gain the licenses and approvals to operate the Nursing Home, it will be subject to the contractual terms of the Lease and applicable non-Bankruptcy Code law with respect to its ability to sell, assign and convey the Lease to a third party. The Disclosure Statement must be revised to make this point clear, and to eliminate the vague and inference laden "Assignment of Rights" section. Acquisition should be required to state clearly in the Disclosure Statement, and the Plan as amended must provide, that any

subsequent assignment of the Lease by Acquisition shall be subject to the terms and conditions of the Lease, including, but not limited to, any use restriction or landlord consent.

WHEREFORE, it is respectfully requested that the Court deny approval of the Disclosure Statement as it is presently filed, and that any approval be conditioned upon appropriate modifications and additional disclosures as are necessary and appropriate to satisfy each of the objections made herein, and that the Court direct Acquisition to make the required amendments to the Plan to conform to the revisions in the Disclosure Statement, and that it grant such further relief as is appropriate under the circumstances.

Dated: Mineola, New York
July 23, 2010

                                        MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP
Attorneys for PJ Park, LLC
By:

    /s/ *Kevin R. Toole*
Kevin R. Toole, Esq.
190 Willis Avenue
Mineola, New York 11501
(Tel) 516-747-0300
(Fax) 516-0653
ktoole@meltzerlippe.com