**DUANE MORRIS LLP**
A DELAWARE LIMITED LIABILITY PARTNERSHIP
By:    Walter J. Greenhalgh, Esq. (Pro Hac Vice)
        Joseph H. Lemkin, Esq. (JL-2490)
744 Broad Street
Suite 1200
Newark, NJ 07102
973.424.2000
Facsimile 973.424.2001
Attorneys for Parkview Care and Rehabilitation Center, Inc.

HEARING DATE: JULY 29, 2010
HEARING TIME: 11:00 A.M.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

--------------------------------------------------------------X

IN RE:

PARKVIEW CARE AND REHABILITATION
CENTER, INC.

                Debtor.

Case No. 08-71867 (DTE)

Chapter 11

--------------------------------------------------------------X

## DEBTOR'S OMNIBUS REPLY TO OBJECTIONS TO THE DEBTOR'S PROPOSED DISCLOSURE STATEMENT

Parkview Care and Rehabilitation Center, Inc. (**"Parkview" or the "Debtor"**) respectfully submits this omnibus reply in response to the objections filed to the Debtor's proposed disclosure statement (the "**Disclosure Statement**").[1]

### Preliminary Statement

1. A disclosure statement's fundamental purpose is to enable holders of claims and interests entitled to vote on a plan of reorganization to make an informed and intelligent decision as whether to vote to accept or to reject that plan.

---

[1] On June 16, 2010, the Debtor filed its Third Amended Chapter 11 Plan (the **"Debtor's Plan"**). On June 17, 2010, this Court entered an Order scheduling a hearing to determine the adequacy of the Debtor's Disclosure Statement, which is scheduled for July 29, 2010 at 11:00 a.m. Capitalized terms used but not otherwise defined herein shall have the meanings set forth for such terms in the Debtor's Plan.

2. It is well-settled that the sole purpose of the hearing to approve a disclosure statement is to determine whether the information provided in such disclosure statement is adequate as contemplated by section 1125 of the Bankruptcy Code, a determination that includes considerations of accuracy and fairness. A disclosure statement hearing is not a proper venue for disgruntled creditors to raise substantive issues related to a chapter 11 plan in an effort to improve their proposed plan treatment or as a medium for parties to initiate specialized discussions of their particular needs and concerns.

3. To date, the Debtor has received two formal objections (collectively, the **"Objections"**). The two parties who have objected to the adequacy of the Debtor's Disclosure Statement are Debt Acquisition Group, LLC ("**DAG**") and Parkview Acquisition 1, LLC ("**Acquisition**" collectively, with DAG, the "**Objecting Parties**"). DAG filed its objection on July 23, 2010 [Docket No. 304] (the "**DAG Objection**") and Acquisition filed its objection on July 22, 2010 [Docket No. 298] (the "**Acquisition Objection**"). Both DAG and Acquisition have filed competing plans and disclosure statements (although an order has not yet been entered by the Court scheduling a hearing regarding the adequacy of DAG's disclosure statement). Glaringly, other than the objections filed by proponents of the two competing plans, no objections have been filed to the adequacy of the Debtor's Disclosure Statement, calling into question the motives of the Objecting Parties.

4. The two objections are improperly interposed at this time and can be easily disposed of. First, the DAG Objection simply questions the financial feasibility of the Debtor's Plan. This issue is not properly before the Court at this time and should be considered in the context of the hearing regarding confirmation of the Debtor's Plan.

5. Acquisition's objection requests only that the Debtor explain, in their Disclosure Statement, why the Debtor's Plan is better for creditors than Acquisition's Plan. This objection is similarly inappropriate. Acquisition's own Plan is replete with gaping holes which raise more questions than are answered. It is not clear how Acquisition intends to implement its plan. Acquisition's plan and disclosure statement are entirely devoid of information regarding: (i) Acquisition's ability to fund its plan; (ii) the likelihood that Acquisition will obtain approvals from the Department of Health; and (iii) the ability of Acquisition to secure concessions from the Landlord in order to effectuate it's plan. Unless and until these issues are addressed, it is premature for the Debtor to even address Acquisition's plan.

## Response

**A. The Disclosure Statement Contains Adequate Information as Required by Section 1125 of the Bankruptcy Code and Should be Approved**

6. Section 1125(b) of the Bankruptcy Code provides that solicitation on a plan of reorganization cannot occur until a court has approved a written disclosure statement as containing "adequate information" - a determination that is the focus of a disclosure statement hearing. Adequate information is defined as the "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor … that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan …." 11 U.S.C. § 1125(a); *see Oneida Motor Freight, Inc.* v. *United Jersey Bank,* 848 F.2d 414, 417 (3d Cir. 1988).

7. As is evident from the legislative history of section 1125 and related case law, courts have broad discretion in determining whether the "adequate information" requirement has been met. The legislative history of section 1125 makes it clear that approval of a disclosure statement requires a practical and flexible approach: "In reorganization cases, there is frequently

great uncertainty. Therefore, the need for flexibility is greatest." *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 408-409 (1977) *reprinted in* 1978 U.S.C.C.A.N. 5963, 6365. Consistent with this need for flexibility, courts may make determinations regarding the adequacy of disclosure on a "case-by-case basis" based on the unique facts and circumstances of each case, while taking into consideration "the need for relative speed in solicitation and confirmation." H.R. Rep. No. 595, at 409; *see Oneida,* 848 F.2d at 417 ("from the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case").

8. A disclosure statement is intended to serve as the means to educate voting constituents, thereby enabling them to make informed judgments about whether to accept or to reject a plan of reorganization. A disclosure statement hearing is not meant to address confirmation objections, for parties to present specialized discussions of their particularized needs and concerns or to require a debtor discuss its future plans vis-à-vis a particular constituency or creditor. *See In re Monroe Well Serv., Inc.,* 80 B.R. 324, 333 n.10 (Bankr. E.D. Pa. 1987) (stating that deciding confirmation issues before disclosure may have a disenfranchising effect because the disclosure statement itself is not mailed to all creditors until after court approval is obtained); *In re Copy Crafters Quickprint,* 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988) ("[C]are must be taken to ensure that the hearing on the disclosure statement does not turn into a confirmation hearing, due process considerations are protected and objections are restricted to those defects that could not be cured by voting ….").

9. Here, the Disclosure Statement complies with the statutory requirements of the Bankruptcy Code and should be approved. Currently, the Disclosure Statement stands at more than 50 pages. The Disclosure Statement also includes projections, a narrative prepared by the Debtor's President in support of the projections, as well as a liquidation analysis, all of which

4

DM3\1442820.1

provide comprehensive and extensive information that is both accurate and relevant to its purpose of enabling stakeholders to make an informed judgment about whether to vote to accept or reject the Plan. The Disclosure Statement includes details concerning the Debtor's business, descriptions of events leading to the filing of chapter 11, accounts of key developments during the course of the chapter 11 case and all of the necessary details surrounding the Debtor's restructuring efforts.

**The DAG Objection**

10. The DAG Objection solely sets forth one conclusory complaint – that the Debtor's Disclosure Statement does not have sufficient information for stakeholders to determine if the Debtor's Plan is feasible. Specifically, DAG complains that the Disclosure Statement lacks information from which a stakeholder can determine availability of resources in the estate to make payments under the Plan. See DAG Objection, ¶¶2 and 8. Belying its own argument, DAG proceeds throughout the balance of its objection to contest the feasibility of the Debtor's plan.

11. Whether or not the Debtor's Plan is feasible will be a subject that the Court will address at confirmation and is not properly before the Court at this time. Notwithstanding the foregoing, in its objection DAG only references the body of the Debtor's Disclosure Statement and fails to reference the detailed projections and narrative supplied by the Debtor as exhibits to the Disclosure Statement. Respectfully, the information supplied in the Debtor's Disclosure Statement, as supplemented by the detailed projections and narrative sets forth "adequate information" for a stakeholder to make an informed decision regarding the Debtor's Plan.

5
DM3\1442820.1

**The Acquisition Objection**

12. Acquisition's sole concern reflected in its objection is that the Debtor should "explain why it believes its plan is better for creditors than Acquisition's plan." See Acquisition Objection, ¶ 3.

13. Given the gaping holes and lack of information contained therein, it is impossible to analyze or assess Acquisition's plan and disclosure statement. Indeed, the Debtor has filed a detailed objection to the adequacy of the Disclosure Statement Describing the Plan of Reorganization Proposed By Parkview Acquisition 1, LLC (the "Debtor's Objection") [Docket No. 307]. The Debtor's Objection is hereby incorporated by reference as if fully set forth herein.

14. By way of brief summary, the Debtor's Objection raises numerous concerns vis-à-vis Acquisition's disclosure statement including, without limitation, the following

> (a) the lack of a meaningful discussion demonstrating how Acquisition plans to fund its plan, including the identity of investors and/or sources of capital;
>
> (b) the lack of a meaningful discussion demonstrating Acquisitions ability to satisfy, and the timeframe for satisfying, certain contingencies required under its plan including: (i) the approval of a receivership application with the Department of Public Health; and (ii) the approval of its application with the DOH for a permanent license;
>
> (c) the lack of discussion regarding the impact upon its Plan in the event the various contingencies are not met;
>
> (d) the failure of Acquisition's disclosure statement to disclose various and recurring enforcement actions and civil penalties taken by the DOH against companies affiliated with Acquisition's principal and the impact of same on Acquisition's efforts to satisfy its plan contingencies;
>
> (e) the lack of information regarding Acquisition's ability to obtain approval from the Debtor's landlord regarding the assignment of the Nursing Home Lease and thus, satisfying the site control requirement in order to obtain the necessary licensure to operate the Debtor's nursing home.

15. Given the foregoing deficiencies, without a basic understanding of Acquisition's plan, the Debtor should not be compelled to discuss Acquisition's plan in its Disclosure Statement.

16. Accordingly, the Debtor believes its Disclosure Statement satisfies the requirements under section 1125 of the Bankruptcy Code and respectfully submits that the Disclosure Statement contains "adequate information" necessary for holders of claims and interests voting on the Plan to cast informed votes regarding the Plan and should be approved.

## **Conclusion**

17. The Disclosure Statement contains adequate information and should be approved, and the Debtor should be afforded the opportunity to proceed to confirmation with respect to the Plan.

Newark, New Jersey  
Dated: July 28, 2010

/s/ *Joseph H. Lemkin*  
Walter J. Greenhalgh  
Joseph H. Lemkin  
DUANE MORRIS LLP  
744 Broad Street  
Newark, New Jersey 07102  
Telephone: (973) 424-2040  
Facsimile: (973) 424-2001

Attorneys for Parkview Care and Rehabilitation Center, Inc.