UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In re:

                                                   Chapter 11

Parkview Care and Rehabilitation Center, Inc.

                                                   Case No. 08-71867-dte

        Debtor.
-----------------------------------------------------------X

**MEMORANDUM DECISION AND ORDER**

*Appearances*:

Genser, Dubow, Genser & Cona, LLP
*Attorneys for Genser,* Dubow, Genser & Cona, LLP
By: Jack Genser, Esq. and Kenneth Kern, Esq.
445 Broad Hollow Road, Suite 19
Melville, New York 11747

Duane Morris LLP
*Attorneys for the Debtor*
By:  Walter J. Greenhalgh. Esq. and Gia G. Incardone, Esq.
744 Broad Street, Suite 1200
Newark, NJ 07102

Ruskin Moscou Faltisckek PC
*Attorneys for the Official Committee of Unsecured Creditors*
By:  Michael S. Amato, Esq.
1425 RXR Plaza, East Tower, 15th Floor
Uniondale, NY 11556-1425

Department of Justice
*Attorneys for the Office of the United States Trustee*
By: Alfred Dimino, Esq.
560 Federal Plaza
Central Islip, New York 11722

Before the Court is the final application for compensation for Genser, Dubow, Genser & Cona, LLP ("Genser") for their work as special counsel (the "Final Application") on behalf of Parkview Care and Rehabilitation Center, Inc. (the "Debtor"). The Final Application seeks fees in the amount of $112,361.90 and expenses in the amount of $4,112.61 (collectively, the "Fee Request"). The Final Application also seeks compensation of $2,118.62, which represents fees that were held back from Genser's First Interim Fee Application. A written objection was filed by the Debtor, and a hearing was held before the Court on July 29, 2010 (the "Hearing"), after which the Court took the matter under submission.

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b), and venue is proper pursuant to 28 U.S.C. §1409(a). The following constitutes the Court's findings of fact and conclusions of law as mandated by Fed. R. Bankr. P. 7052.

## BACKGROUND:

On April 16, 2008 (the "Petition Date") the Debtor filed a voluntary petition for relief under chapter 11. The Debtor operates a residential nursing care facility located in Massapequa, New York, and has been operating for over thirty-seven years. On May 23, 2008 the Debtor filed an application to employ Genser as Special Counsel to the Debtor to handle specialized non-bankruptcy litigation including, but not limited to, collection matters, Medicaid/Medicare matters, guardianships, and health insurance disputes. No opposition was filed to the Genser retention, and on June 26, 2008, the Court entered an Order authorizing the retention and employment of Genser under section 327(e) of the Bankruptcy Code ("Code") *nunc pro tunc*.

Genser filed a First Interim Fee Application on October 31, 2008, in which it sought compensation for the period of April 16, 2008 through August 14, 2008. Genser requested $21,186.25 in fees and $704.12 in expenses. At a hearing held on December 9, 2008 the Court

2

awarded Genser 90% of its fees, in the amount of $19,067.63, and all of its expenses. Genser filed a Second Interim Fee Application on May 26, 2009, but withdrew it after being informed by the Debtor that the Debtor would object to the application and also was terminating its relationship with Genser. Thereafter, on August 26, 2009 the Debtor filed an application to substitute the law firm of Wolf, Haldenstein, Adler, Freeman and Herz, LLP ("Wolf Haldenstein") for Genser as special counsel, and on November 3, 2009 the Court entered an Order authorizing the Wolf Haldenstein retention.

On April 5, 2010 Genser filed the instant Final Application seeking fees in the amount of $112,361.90 and expenses in the amount of $4,112.61 for the fee period of August 15, 2008 through February 8, 2010 (the "Final Compensation Period").[1]  According to the time records provided to the Court, the total time spent by Genser's attorneys and paraprofessional during the Final Compensation Period was 488.97 hours. Genser acted on behalf of the Debtor in the following areas:

(1) Collection Matters – Genser worked on collecting on resident/patient accounts receivables;

(2) Guardianship Matters – Genser represented the Debtor with various petitions for guardianship in situations where the Debtor has not secured a payment source for a resident/patient and family members are either uncooperative or unavailable;

(3) Creditors' Petitions – Genser represented the Debtor in connection with various creditors' petitions in situations where the Debtor is owed moneys from the estate of a deceased resident/patient;

(4) Reimbursement Issues – Genser represented the Debtor with advice on various issues concerning third-party reimbursement, such as from the Medicare and Medicaid programs;

(5) Medicaid Issues – Genser represented the Debtor in connection with the preparation, filing and support of applications for medical assistance under the Medicaid program.

---

[1] Genser represented to the Court in its papers and at the Hearing that any services that it performed after it was substituted out for Wolf Haldenstein's retention were done only as necessary to attend to time sensitive issues, and only constituted approximately 20 hours.

(ECF Docket No. 270).

The Debtor filed an objection to the Final Application. While acknowledging that certain matters handled by Genser were complex, the Debtor maintains that many were simple collection matters, and that Genser failed to conduct a cost/benefit analysis when determining how to proceed, resulting in higher than necessary fees and expenses. The Debtor requests that the Court reduce the fees requested in the Final Application due to the "minimal benefit" to the Debtor's estate. Genser's filed a reply to the Debtor's objection (the "Reply") and vigorously disputed the Debtor's characterization of Genser's services.

In support of its argument that Genser failed to do a cost/benefit analysis, the Debtor directs the Court's attention to five of the approximately twenty-two matters that Genser worked on for the Debtor. In the first matter the Debtor states that Genser billed the Debtor $72,000.00 to only collect $75,000.00, which represented approximately half of a $137,688.16 patient care bill. Genser states that during its pursuit of the claim, which was in its "infancy" when the firm got the file, Genser discovered that the Debtor's accounts department had failed to properly invoice the matter. Debtor was unable to provide Genser with necessary evidence or a witness that could support the Debtor's claims against the defendant. Genser states that it was in constant contact with the Debtor during the litigation and always took into consideration the fees expended on the matter.

As to the second collection matter, the Debtor complained that Genser incurred $4,257.00 in fees in an attempt to collect on an unpaid patient care bill of $5,499.00 that ultimately Genser was unable to recover and advised the Debtor to write off. However, in its Reply, Genser says that the Debtor is incorrect as to the amount billed and that Genser only

4

billed $409.47 for the matter, and that the only work done post-petition was correspondence sent to the Debtor requesting the authority to close the case.

With the third collection matter, the Debtor claims that a settlement offer was made by the defendant in the matter that Genser rejected out of hand without ever communicating the offer to the Debtor. Furthermore, the Debtor complains that although Genser billed $12,768.00 for the matter, it did not recover any portion of the bill for benefit of the Debtor's estate. Genser states that in this matter it was successful in getting meritless counterclaims against the Debtor dismissed, and that when it received offers to settle the litigation, it was the Debtor that rejected the offers. As for the proposed settlement offer that the Debtor asserts Genser never communicated to the Debtor, Genser states that when it received the offer it informed the defendant in that matter that Genser was not optimistic that the Debtor would accept the settlement. Genser maintains that this was not a rejection of the offer, but was a negotiation tactic.

With respect to the fourth matter, the Debtor complains that Genser billed the Debtor $18,217 in fees for obtaining information from the patient or the patient's family/representatives that was necessary to complete a Medicaid application. Additionally, in that matter the court handling the proceeding awarded Genser fees that Genser did not immediately turn over to the Debtor in violation of the Code until after receiving specific demands from the Debtor about the procedures for compensation required by the Code. Genser maintains that its billing was appropriate as its work in the matter was for both a guardianship proceeding and securing Medicaid benefits for the patient. Genser's states that its efforts resulted in the Debtor receiving over $154,000.00 in full reimbursement of the patient's account. As to the issue with the fees that were not immediately turned over, Genser cites its unfamiliarity with the Code, and states

that once it was informed as to the compensation procedure set forth in the Code it turned over the fees.

The final matter that the Debtor complains of relates to Genser's fees in completing a Medicaid application for an individual patient. Genser charged the Debtor $10,956.00 for the matter, but Debtor only recovered $22,343.22 from Medicaid, wiping out approximately half of the value to the Debtor's estate. Genser asserts that the fees charged were appropriate for the work performed, which included filing and processing the Medicaid Application, which required Genser communicating with federal and state agencies due to the patient's failure to provide any of the necessary documentation and resulted in the Debtor receiving funds from Medicaid as opposed to receiving nothing at all.

There were two other issues that the Debtor raised in its objection. The first was that Genser's billing was inconsistent since its First Interim Fee Application had the billing in fifteen minute increments, and the Final Fee Application had the billing in ten minute increments. Genser asserts that it modified its billing practices to be in accordance with the Bankruptcy Rules. The Debtor also states that Genser failed to comply with its contractual requirement to furnish the Debtor with monthly status reports, and that Genser excessively billed the Debtor approximately $2,000 for one of the reports. However, Genser states that it was the Debtor's administrator that asked Genser to refrain from the monthly status reports in order to keep costs down, and that the administrator informed Genser that the reports could be given verbally.

Genser cites to five other cases that it worked on for the Debtor as evidence of how Genser's performance has resulted in significant awards that benefited the Debtor's estate. In the first collection matter cited by Genser, Genser recovered $217,812.00 for the Debtor and billed the Debtor $23,880.24, approximately 11% of the amount recovered for the Debtor. The second

collection matter cited by Genser states that Genser recovered $185,500.00 from Medicaid for the Debtor and only billed the Debtor $3,292.24. In the third collection matter that Genser cited to, Genser recovered $77,655.20 for the Debtor and billed $9,235.95. Genser was able to collect $45,006.42 owed to the Debtor and billed a nominal fee of $1,582.27, which was approximately 3% of the amount recovered. In the final matter cited by Genser, it was successful in getting $260,000.00 from Medicaid for the Debtor that only resulted in a bill to the Debtor in the amount of $4,785.78.

The Court notes that the Official Committee of Unsecured Creditors (the "Committee") filed a written objection to the Final Application, but orally withdrew its objection at the Hearing. Additionally, at the Hearing the Office of the United States Trustee informed the Court that it had no objections to the Final Application. This leaves the Debtor as the only objecting party.[2] At the conclusion of oral arguments, the Debtor requested additional time to file further written objections. The Court granted the request and gave the Debtor ten days for further submissions, and also provided Genser with ten days to file a reply. The Court notes that the ten day period has elapsed for both parties, and the Court has not received any additional papers. Thus, the Court will proceed based upon the papers that were submitted in advance of the Hearing and the record of the Hearing.

## DISCUSSION:

Section 330 of the Code provides that a bankruptcy court can award "reasonable compensation for actual, necessary services" that have been rendered by a professional of the estate as well as actual and necessary expenses. 11 U.S.C. §§ 330(a)(1)(A) and (B) (2010). Bankruptcy judges "have wide discretion in fixing the amount of attorney fees to be awarded in

---

[2] 1199 SEIU United Health Care Workers East (the "Union") and 1199SEIU Greater New York Funds (the "Funds") filed a reservation of rights to object to the Final Application, but they have not raised any formal objections.

proceedings before them." *In re Waxman*, 148 B.R. 178, 181 (Bankr. E.D.N.Y. 1992). Before determining "the reasonableness of the service, the Court must make a threshold inquiry into its necessity." *In re Keene Corp.*, 205 B.R. 690, 696 (Bankr. S.D.N.Y. 1997) (internal citations omitted). A majority have held that if a service benefits the estate, then it would be "necessary." *Id.* (*citing In re Engel*, 190 B.R. 206, 209 (Bankr. D.N.J. 1995)). According to the Code, a bankruptcy court's inquiry into the reasonableness of compensation shall include, but is not limited to:

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue or task addressed;
> ….
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

*See* 11 U.S.C. §330(a)(3)(A-F). Furthermore, when determining the reasonableness a court "must not penalize attorneys by viewing the efforts of counsel with the benefit of '20/20 hindsight.'" *In re Korea Chosun Daily Times, Inc.*, 337 B.R. 758, 767 (Bankr. E.D.N.Y. 2005)

This Court has previously noted that when making a determination as to whether fees are reasonable, the Second Circuit will consider, *inter alia*, the following:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the

8

> professional relationship with the client; and (12) awards in similar cases.

*In re Schackner*, 2010 Bankr. LEXIS 1224, *10 (Bankr. E.D.N.Y. Apr. 6, 2010) (*quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 186-90 (2d Cir. 2007), which held that courts should consider the factors in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d.714 (5th Cir. 1974)). However, the pertinent test "is an objective one" which considers "what services a reasonable lawyer or legal firm would have performed in the same circumstances." *In re Keene Corp.*, 205 B.R. at 696.

The Debtor raises a serious charge in its contention that "[a]t all times, Genser Dubow failed to weigh the costs and benefits to initiating or continuing certain litigation based upon the likelihood of success or recovery, resulting in an overall failure to handle the Debtor's cases in a cost-effective manner." (Debtor's Objection at 2). However, the Court disagrees.

It is clear from a review of the time records submitted that Genser expended time and labor in its efforts on behalf of the Debtor. The Debtor references five matters that Genser worked on, of approximately twenty-two, in support of its arguments. However, as shown above, Genser has provided the Court with credible reasons as to why the fees were incurred in those "problem" cases, and Genser even points out that in one of those cases, it was the Debtor's own accounting department that appears to have precluded a more speedy resolution of the matter that may have resulted in reduced fees. The Debtor did not provide evidence to support its allegations.

The Debtor does not complain of the rate that Genser charged for the work performed, and does not assert that the attorneys at Genser were not experienced and capable attorneys. Rather, the Debtor complains that, in its opinion, Genser could have done a better cost/benefit analysis with respect to the matters worked on, and that Debtor feels that the actions taken

resulted in a greater number of hours that caused the Debtor's estate to incur unnecessary fees and expenses for the Debtor's estate.

The Court will not use hindsight to determine whether Genser's litigation strategy was the appropriate one to take, especially in light of the various paths that Genser could have taken and the complexities, as Debtor acknowledges, of the matters that it was handling. It appears that the actions taken by Genser were reasonable, and did in fact benefit the estate. In fact, Genser's Reply highlighted five cases where Genser recovered substantial sums for the benefit of the Debtor's estate, and billed the Debtor for a percentage of no more than 12% and as little as 2% of the total recoveries in those matters.

The Debtor's dissatisfaction with Genser notwithstanding, the Debtor has not shown how Genser's handling of the matters resulted in an "overall failure" in handling the litigation or how the actions taken were unreasonable and did not benefit the estate. As a result, the Court finds Genser's fees to be reasonable, and Genser should be compensated.

## **CONCLUSION:**

Having reviewed the time records of the Final Application and the First Interim Fee Application, the Court finds that a de minimis reduction in the amount of fees is appropriate in light of some instances of duplicative work, and as such the Court will not award the amount held back from the First Interim Fee Application in the sum of $2,118.62.

Based on the foregoing, Genser's Application is granted, and Genser shall be compensated fees in the amount of $112,361.90, representing the total amount sought in its Final Application. Genser's requested expenses in the amount of $4,112.61 are also approved.

So ordered.

Dated: Central Islip, New York
September 7, 2010

*s/ Dorothy Eisenberg*
Honorable Dorothy Eisenberg